UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:15-cr-00040-JAW-3 |
| | ) | |
| | ) | |
| JERMAINE MITCHELL, a/k/a MELO, | ) | |
| a/k/a MB, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON
MOTION TO SUPPRESS EVIDENCE (ECF NO. 224)**

This matter is before the Court on Defendant's Revised Motion to Suppress. (ECF No. 224.) Through his motion, Defendant seeks to exclude from trial evidence that law enforcement recovered during an encounter with Defendant at a bus terminal in Portland, Maine, on August 29, 2013.

Following an evidentiary hearing, and after consideration of the parties' arguments, I recommend that the Court deny Defendant's motion.

**Proposed Findings of Fact**

Based on the evidence, I propose that the Court find the following facts:

1. On August 29, 2013, Defendant was a passenger on a Concord bus that was traveling to Bangor, Maine.

2. At approximately 7 p.m., the bus stopped at a terminal in Portland, Maine.

3. At the time of the stop, members of the Maine State Police were working two separate details at the terminal. Members of the commercial vehicle enforcement division were present to inspect buses. In addition, drug enforcement agents were on the scene.

4. The drug enforcement agents were making contact with passengers in an effort to identify people who were bringing guns and drugs into Maine.

5. Officer Scott Quintero, one of the drug enforcement officers assigned to the detail, observed Defendant standing in an open area in the parking lot.

6. Officer Quintero, who was dressed in regular clothes, approached Defendant, showed Defendant his badge, and informed Defendant that he was looking for individuals who were bringing guns and drugs into the state.

7. When Officer Quintero spoke with Defendant, he did not place his hands on Defendant or otherwise restrict Defendant's movement. In addition, no other officers were with Officer Quintero when he spoke with Defendant.

8. Officer Quintero told Defendant that Defendant did not have to speak with him if he did not want to talk.

9. Defendant described Officer Quintero's efforts to identify individuals with guns and drugs as a "good thing." He also told Officer Quintero that he was traveling from New Haven, Connecticut to Bangor, Maine.

10. When Officer Quintero asked Defendant if he had anything on him, Defendant told him that he might have a little marijuana.

11. Upon Officer Quintero's request, Defendant also consented to a search by a canine trained to detect the presence of drugs. The canine officer walked the dog around Defendant, and the dog indicated the presence of drugs.

12. In Officer Quintero's mind, had Defendant at that point attempted to leave, Officer Quintero likely would have restrained him.

13. Following the canine search, Officer Quintero asked Defendant if he would feel more comfortable moving to the side of the nearby terminal. Defendant agreed. Officer Quintero and Defendant then walked to the side of the building. Officer Quintero did not use force of any kind.

14. When they arrived at the side of the building, Defendant advised that he might have something more on him. As he made the statement, he gestured with his head in the direction of his right leg.

15. After Defendant said that he might have something else on him, Officer Quintero administered to Defendant his *Miranda* rights. Defendant agreed to talk.

16. Officer Quintero asked Defendant for the location of the marijuana. Defendant advised that the marijuana was in the pocket of his pants. When Officer Quintero asked if he could get the drugs, Defendant replied that he could.

17. Officer Quintero then reached into Defendant's pocket, and he found the marijuana and a white substance that appeared to be crack cocaine.

18. Officer Quintero then advised Defendant that what he found would likely result in Defendant's arrest. He told him that if he had anything else that he should not have, he should know that the possession of the items when he was processed at the jail would be a felony. Defendant then nodded to his right leg. When asked if he had crack cocaine there, Defendant replied that he did. When Officer Quintero searched Defendant, he found one bag of crack cocaine and also multi-colored pills. Defendant stated that he did not know what the pills were.

19. Officer Quintero then placed Defendant in handcuffs.

20. Officer Quintero's entire encounter with Defendant consumed approximately five minutes.

**Discussion**

Defendant contends that from the start of his encounter with Officer Quintero, he was subject to an unlawful stop as the officer lacked reasonable articulable suspicion for a stop. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio,* 392 U.S. 1, 9 (1968)). However, "not all encounters between law enforcement officers and citizens constitute seizures." *United States v. Smith*, 423 F.3d 25, 28 (1st Cir. 2005). "[P]olice may 'approach citizens in public places and ask them questions without triggering the protections of the Fourth Amendment.'" *Id*. (quoting *United States v. Young*, 105 F.3d 1, 6 (1st Cir. 1997)). As the Supreme Court has explained, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). An encounter between an individual and law enforcement constitutes a seizure when "coercion, not voluntary compliance, most accurately describes the encounter." *Smith*, 423 F.3d at 28 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

In this case, Officer Quintero's initial contact with Defendant did not involve the use or show of force, or any other indicia of coercion. At the time, Defendant was in an open parking lot, and his movement was not restricted by any vehicles or other obstacles. Officer Quintero was dressed in plain clothes, and did not place his hands on Defendant or otherwise block or limit Defendant's movement. Officer Quintero also advised Defendant that Defendant was not obligated to talk with him. Finally, the tone of the conversation was not accusatory or in any way

confrontational. Officer Quintero's questioning of Defendant in the open parking lot of the bus terminal, therefore, did not constitute a seizure of Defendant.

Following Defendant's revelation that he possessed illegal drugs, Officer Quintero had probable cause to arrest Defendant for the possession of drugs. That is, a defendant's admission can establish probable cause. *See e.g., United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search."); *see also*, *e.g.*, *United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003) (concluding that defendant's response to the question, "Is there anything on you I need to know about, such as needles or anything of that nature," gave officer probable cause to search and arrest defendant); *United States v. Roberts*, 274 F.3d 1007, 1016 (5th Cir. 2001) (finding defendant's challenge to district court's consent to search finding was irrelevant where defendant admitted before the search occurred that computer disks in his possession contained child pornography).

Because Officer Quintero had probable cause to arrest Defendant after his admission, he also had sufficient cause to search Defendant. *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). The fact that Officer Quintero formally placed Defendant under arrest after the search does not invalidate the search. *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) ("[W]hether a formal arrest occurred prior to or followed 'quickly on the heels' of the challenged search does not affect the validity of the search so long as the probable cause existed prior to the search.") (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)).

Even if Defendant's admission alone was deemed insufficient to establish probable cause, the admission together with the presence of drugs detected as the result of the search by the canine plainly established probable cause. Defendant, however, contends that he did not consent to the search and, therefore, the results of the search cannot be used to support a probable cause finding.

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *see also United States v. Brake*, 666 F.3d 800, 806 – 807 (1st Cir. 2011) (involving search of a bag); *United States v. Jones*, 523 F.3d 31, 37 (1st Cir. 2008) (involving search of premises). "In order for consent to be valid, the Government must prove by a preponderance of the evidence that the consenting party gave it freely and voluntarily." *Jones*, 523 F.3d at 37. Whether the consent was freely and voluntarily given turns on the totality of the circumstances regarding the interaction between the investigating officers and the consenting party. *Id.*

Here, when Officer Quintero asked Defendant if he would consent to a canine search, Defendant granted his consent. As explained above, the Government has demonstrated that Officer Quintero's interaction with Defendant prior to Defendant's arrest was not coercive or intimidating such that the voluntariness of his consent to the canine search can be seriously questioned. Because Defendant voluntarily consented to the canine search, the evidence derived from the search can be properly used to establish probable cause to arrest and thus to conduct a search of Defendant's person incident to the arrest.

In sum, the record establishes (1) that Officer Quintero's initial communication with Defendant in the parking lot of the bus terminal did not constitute a stop within the protection of the Fourth Amendment, (2) that Defendant's admission that he possessed illegal drugs constitutes

probable cause to support Defendant's arrest and the search of Defendant, and (3) alternatively, Defendant consented to the canine search, which generated additional evidence to support probable cause to arrest and search Defendant.

## Conclusion

Based on the foregoing analysis, I recommend that the Court deny Defendant's Revised Motion to Suppress (ECF No. 224).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 6th day of October, 2015.