UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:15-cr-00040-JAW |
| | ) |
| JERMAINE MITCHELL and | ) |
| AKEEN OCEAN | ) |

**ORDER ON MOTION *IN LIMINE* AND MOTION TO SEVER**

Concluding that Mr. Mitchell has failed to demonstrate that the admission of his co-defendant's out-of-court statements at trial will violate the Confrontation Clause, the Court denies Mr. Mitchell's motion in limine to exclude the out-of-court statements, or in the alternative, to sever the trial.

## I.   PROCEDURAL BACKGROUND

On February 12, 2015, a federal grand jury indicted Jermaine Mitchell and Akeen Ocean (Defendants), along with nine others, charging them with engaging in a conspiracy to distribute cocaine base. *Indictment* (ECF No. 3). Mr. Ocean pleaded not guilty to the charge on February 20, 2015, *Entry* (ECF No. 74), as did Mr. Mitchell on March 13, 2015. *Entry* (ECF No. 149). The Defendants' jury trial is set to begin on June 20, 2016, *Notice of Hr'g* (ECF No. 430), with the jury having been selected on June 7, 2016. *Entry* (ECF No. 482).

On June 6, 2016, Mr. Mitchell filed a motion in limine seeking to exclude from evidence statements made by Mr. Ocean to law enforcement regarding the existence of a conspiracy and Mr. Mitchell's involvement in a conspiracy, or in the alternative to sever the Defendants' trial. *Mot. In Limine Re: Statements of Co-Def. or, in the*

*Alternative, to Sever Defs.* (ECF No. 479) (*Def.'s Mot.*). The Government filed its objection to Mr. Mitchell's motion on that same day. *Gov't's Obj. to Def.'s Mot.* In Limine *Re: Statements of Co-Def. or, in the Alternative, to Sever Defs.* (ECF No. 480) (*Gov't's Opp'n*). On June 9, 2016, the Court issued an order denying Mr. Ocean's amended motion to suppress the statements he made to law enforcement at issue in Mr. Mitchell's motion in limine. *Order on Mot. to Suppress* (ECF No. 487).

## II.   STATEMENT OF FACTS

In early September, 2014, as part of the investigation into the illegal activities of a New Haven, Connecticut based street gang known as the Red Side Guerilla Brims (RSGB), several officers and agents from the New Haven Police Department (NHPD) and the New Haven Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives travelled to Bangor, Maine to work with Maine Drug Enforcement Agency agents in conducting interviews and engaging in enforcement activity. *Aff. of Martin Podsiad* at 1 (ECF No. 355-1) (*Podsiad Aff.*). On the afternoon of September 4, 2014, Detectives Martin Podsiad, Josh Kyle, and Alberto Merced of the NHPD interviewed Mr. Ocean concerning his knowledge of RSGB activity. *Id.* The interview was recorded and has been transcribed by the Government. *9/4/2014 Interview of Akeen Ocean* (ECF Nos. 355-2, 355-3, 355-4) (*Tr.*). During the interview, Mr. Ocean told the Detectives, inter alia, about the drug trafficking activities of alleged co-conspirators Rodrigo Ramirez and Christian Turner. *Tr.* at 6. Mr. Ocean also mentioned "MB" as being involved with Turner and Ramirez. *Id.* at 7. "MB" is allegedly one of Mr. Mitchell's nicknames.

Counsel for the Government and for Mr. Mitchell discussed the recording and transcript of the interview of Mr. Ocean, and defense counsel raised concerns about *Bruton*[1] Confrontation Clause issues.  *Def.'s Mot.* at 2.  On May 26, 2016, the Government prepared a redacted audio recording and redacted transcript of the interview of Mr. Ocean and provided it to Mr. Mitchell, removing any mention of Mr. Mitchell or "MB."[2]  *Gov't's Opp'n* at 1.

### III.  POSITIONS OF THE PARTIES

#### A.  Jermaine Mitchell's Motion

Mr. Mitchell argues that though the Government has prepared a redacted version of the recording and transcript of Mr. Ocean's interview with law enforcement eliminating his name, the interview still contains evidence concerning the existence of the conspiracy which is "powerfully incriminating" and should be excluded pursuant to *Bruton*.  *Def.'s Mot.* at 2-3.  Specifically, Mr. Mitchell argues that under *Bruton* and First Circuit precedent a co-defendant's out-of-court statements may be introduced at a joint trial, provided that "(i) the district court instructs the jury not to consider the statements against any defendant other than the declarant and (ii) the statements are not so powerfully inculpating of the other defendant that there would be substantial doubt as to whether the jury could abide by a limiting instruction."  *Id.* at 2.

Mr. Mitchell concedes that "a defendant's out-of-court confession generally will be admitted if it is redacted to delete the [co-defendant's] name and any reference,

---

[1]     *Bruton v. United States*, 391 U.S. 123 (1968).
[2]     Redacted versions of the recording and transcript have not been submitted to the Court.

3

direct or indirect, to his or her existence," *id.* at 2-3 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *United States v. Vega Molina*, 407 F.3d 511, 519 (1st Cir. 2005)), and that "[s]tatements that are incriminating only when linked to other evidence in the case do not trigger application of *Bruton's* preclusionary rule." *Id.* at 3 (citing *Richardson*, 481 U.S. at 208). He contends that although the redaction eliminates any mention of Mr. Mitchell, Mr. Ocean's statement is powerfully incriminating on the issue of the existence of the conspiracy because Mr. Ocean is from a completely different circle of participants from some of the other witnesses who will offer similar testimony regarding the existence of the conspiracy, and if Mr. Ocean does not take the witness stand, Mr. Mitchell "will have virtually no opportunity to cross-examine the statement, thereby impinging his 6th Amendment right to confrontation." *Id.*

Lastly, Mr. Mitchell contends that several statements made by Mr. Ocean and the Detectives during the September 4, 2014 interview are hearsay, lack relevance, and are unfairly prejudicial pursuant to Federal Rule of Evidence 403. *Id.* at 3-4. He petitions the Court to make preliminary evidentiary rulings on these statements, exclude them from the joint trial, or in the alternative, sever the Defendants and conduct separate trials. *Id.* at 4-5.

### B. The Government's Opposition

The Government argues that because the audio recording and transcript of Mr. Ocean's interview have been redacted to remove any reference to Mr. Mitchell, and because the Government does not intend to use this evidence against Mr. Mitchell, Mr. Ocean's statement does not present a *Bruton* problem. *Gov't's Opp'n* at 3. The

4

Government contends that, in the redacted form, Mr. Ocean's statements are not "powerfully inculpating or inculpating at all" of Mr. Mitchell, as the statement does not identify Mr. Mitchell, much less as a perpetrator of the crime. *Id.* The Government suggests that when the audio recording of the interview is played, the Court should instruct the jury not to consider the statements against Mr. Mitchell. *Id.* (citing *Vega Molina*, 407 F.3d at 519). Moreover, the Government argues that because Mr. Mitchell's argument regarding the incriminating nature of Mr. Ocean's statement cannot be made without linking that statement to other evidence that Mr. Mitchell anticipates will be offered during trial, the statement by definition is not powerfully incriminating. *Id.* (citing *Vega Molina*, 407 F.3d at 520) (statements that are incriminating only when linked to other evidence in the case do not trigger application of *Bruton's* preclusionary rule).

In conclusion, the Government submits that assuming the Court gives a limiting instruction to the jury to the effect that the statements of Mr. Ocean should not be considered in anyway against Mr. Mitchell, "Mr. Mitchell's hearsay and other evidentiary objections to the recording have virtually no force." *Id.* at 4. The Government argues that evidentiary objections to evidence that the jury will be instructed not to consider against Mr. Mitchell "are objections that do not need to be made or ruled upon by the Court," and urges the Court to deny Mr. Mitchell's motion in limine and motion to sever Defendants. *Id.*

## IV. DISCUSSION

### A. The Confrontation Clause and *Bruton*

The Confrontation Clause of the Sixth Amendment, extended to the States by the Fourteenth Amendment, guarantees the right of a criminal defendant "to be confronted with the witnesses against him." *Richardson*, 481 U.S. at 206 (citing U.S. CONST. amend. VI). The right of confrontation includes the right to cross-examine witnesses. *Id.; Pointer v. Texas*, 380 U.S. 400, 404, 406-407 (1965). In *Bruton*, the Supreme Court held that the admission of a defendant's confession that inculpated his co-defendant violated that co-defendant's Sixth Amendment right of cross-examination. 391 U.S. at 126.[3] In support, the *Bruton* Court cited the Advisory Committee of the Federal Rules, which had issued the following note two years prior: "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." FED. R. CRIM. P. 14 advisory committee's note (1966).

The co-defendant's confession in *Bruton* "expressly implicat[ed]" the defendant as his accomplice and was "powerfully incriminating." 391 U.S. at 124 n.1, 135. In *Richardson*, the Supreme Court held that where a confession is not incriminating on its face, and becomes so only when linked with evidence introduced later at trial, it

---

[3]     Bruton and his co-defendant, Evans, were tried jointly for armed postal robbery. At the trial, a postal inspector testified that Evans orally confessed to him that he and Bruton committed the armed robbery. Both defendants were convicted, and Bruton argued on appeal that this evidence should have been deemed inadmissible. The Supreme Court held that the admission of Evans' confession violated Bruton's right of cross-examination under the Sixth Amendment. *Id.* at 126.

6

does not trigger exclusion of a co-defendant's confession under *Bruton*. 481 U.S. at 208.

Moreover, the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession when proper limiting instructions are given and the confession is redacted to eliminate the defendant's name and any reference to him. *Id.* at 211; *Vega Molina*, 407 F.3d at 519 (a defendant's out-of-court statements may be introduced at a joint trial if "(i) the district court instructs the jury not to consider the statements against any defendant other than the declarant and (ii) the statements are not so powerfully inculpating of the other defendants that there would be substantial doubt as to whether the jury could abide by a limiting instruction"; a defendant's out-of-court confession generally will be admitted "if it is redacted to delete the codefendant's name and any reference, direct or indirect, to his or her existence").

The un-redacted section of the transcript of Mr. Ocean's interview that involves Mr. Mitchell reads as follows:

| | |
|---|---|
| Podsiad: | That's fine, tell me about them. When did you start dealing with them? |
| Ocean: | Son, that was, I ain't dealt with Rico in like two years; that was back in like 2011, 2010. |
| Podsiad: | Okay. |
| Ocean: | Mm. |
| Podsiad: | How was you introduced to him? |
| Ocean: | Through Christie. |

>    Podsiad:   Christie who?
>
>    Ocean:    Christie, God damn, what's Christie's last name. Christie, oh God, from Court Street, she got caught, but she met them through some dude they just call MB, MB, that's all I know.

*Tr.* at 7.  This is the only reference to Mr. Mitchell, his alleged nickname or otherwise, in the interview.  The redacted transcript and recording that the Government intends to offer at trial contains the following, beginning with the introduction question:

>    Podsiad:   How was you introduced to him?
>
>    Ocean:    Through Christie.
>
>    Podsiad:   Christie who?
>
>    Ocean:    Christie, God damn, what's Christie's last name. Christie, oh God, from Court Street, she got caught, but she met them through some dude.

*Gov't's Opp'n* at 1-2.

The Government's proposed redactions address any Confrontation Clause issue.  As the First Circuit held, the application of *Bruton* and *Richardson* to redacted statements "requires careful attention to both text and context," and that:

>    [t]he mere fact that the other defendants were on trial for the same crimes to which the declarant confessed is insufficient, in and of itself, to render the use of neutral pronouns an impermissible means of redaction. A particular case may involve numerous events and actors, such that no direct inference plausibly can be made that a neutral phrase like "another person" refers to a specific codefendant.

*Vega Molina*, 407 F.3d at 520.  Mr. Mitchell and Mr. Ocean were charged with nine other Defendants in the conspiracy, eight of whom are men.  No direct inference can plausibly be made that a reference to "some dude" is a reference to Mr. Mitchell,

8

especially when no mention of him is made anywhere else in the Ocean interview and the jury has no reason to believe that this "some dude" was even a member of the charged conspiracy. Indeed, the context of Mr. Ocean's response was to a question about how he met Rico; Mr. Ocean told the police that he had been introduced to Rico by Christie. There is no direct evidence that this introduction was related to the drug conspiracy itself.

Moreover, Mr. Mitchell's argument that the impact of Mr. Ocean's out-of-court statements when taken into consideration with other witness testimony regarding the existence of the conspiracy is "powerfully incriminating" falls short, as statements that are incriminating only when linked to other evidence in the case do not trigger application of *Bruton's* preclusionary rule. *Vega Molina*, 407 F.3d at 520.

The proposed redactions eliminate the risk of the statement being incriminating at all, much less "powerfully incriminating" of Mr. Mitchell, and when coupled with limiting instructions that direct the jury not to consider Mr. Ocean's out-of-court statements against Mr. Mitchell,[4] admission of the statements does not run afoul of *Bruton*.

---

[4] The Court requested that the Government file a proposed instruction concerning how the jury should treat the recorded statement of Mr. Ocean. On June 14, 2016, the Government filed the following proposed jury instruction:

> The government introduced evidence that Akeen Ocean made a statement to detectives from the New Haven, Connecticut Police Department. I caution you that you may consider Mr. Ocean's statement to the detectives only in resolving whether Mr. Ocean is guilty or not guilty. You may not consider or discuss this evidence in any way in resolving whether Jermaine Mitchell is guilty or not guilty. Mr. Ocean's statement is evidence only against Mr. Ocean and not against Mr. Mitchell.
>
> You must decide whether Mr. Ocean did in fact make the statement. If you find that Mr. Ocean did make the statement, then you must decide what weight, if any, you feel the statement deserves. In making this decision, you should consider all matters in

9

B.  **Motion to Sever**

The First Circuit has stated that the "default rule is that defendants who are indicted together should be tried together." *Vega Molina*, 407 F.3d at 531. This rule is subject to some exceptions. *Id.* Severance is governed by Rule 14 of the Federal Rules of Criminal Procedure:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.
>
> (b) Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

FED. R. CRIM. P. 14; *see also United States v. Trainor*, 477 F.3d 24, 37 (1st Cir. 2007) ("The trial court has the discretion both to sever counts to avoid prejudice and to order that separate cases be tried together as though brought in a single indictment . . . if all offenses and all defendants could have been joined in a single indictment").

The proposed redactions to Mr. Ocean's recorded interview, coupled with a jury instruction not to consider any of Mr. Ocean's out-of-court statements against Mr. Mitchell, eliminates the risk of prejudice to Mr. Mitchell and alleviates the need to sever the trial. Moreover, as Justice Scalia noted:

> It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate

---

evidence having to do with the statement, including those concerning Mr. Ocean himself and the circumstances under which the statement was made.

*Gov't's Second Suppl. Requested Jury Instr.* at 1 (ECF No. 490). Mr. Mitchell and Mr. Ocean have not yet responded to the proposed jury instruction.

10

> proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.  The Court determines that, in the interest of justice, efficiency, and fairness, Mr. Mitchell and Mr. Ocean are to be tried together.

### C.    Other Evidentiary Issues

Mr. Mitchell argues that several statements made by Mr. Ocean and the Detectives during the September 4, 2014 interview are hearsay, lack relevance, and are unfairly prejudicial.  *Def.'s Mot.* at 3-4.  Specifically, Mr. Mitchell objects to Mr. Ocean's statement, in response to a Detective's question, that some of the named dealers were staying "everywhere."  *Id.*  This statement appears in the transcript as follows:

> Podsiad:    Okay, about a year and a half.  Um, do you remember at that time where they were staying or who they were staying with?
>
> Ocean:      They was staying everywhere, man.

*Tr.* at 11.[5]  Another issue is Detective Podsiad's question about whether Jackie Madore was dealing with two of the dealers and Mr. Ocean's response, "I guess so."[6]

---

[5]   Mr. Ocean goes on to say that these dealers might stay at "this house" one night and that he bumped into them one night at Gemma's.  *Tr.* at 11.
[6]   The full quote is "I guess so.  Maybe a couple of times, I use to get high with her, I was like, I don't be in they business."  *Tr.* at 13.

11

*Tr.* 13. Finally, Mr. Mitchell objects to Detective Podsiad's characterization of Bangor as a "hot spot for a lot of these dudes . . . because it's easily available to get firearms here."[7] *Id.*

It is difficult to understand why statements from a party defendant are hearsay as against Mr. Ocean, FED. R. EVID. 801(d)(2), and in fact Mr. Ocean is not objecting to their admission. To the extent that Mr. Mitchell is objecting, the Court will instruct the jury that it may not use the contents of Mr. Ocean's statement against Mr. Mitchell. Finally, in the broader context of the interview, the basis of Mr. Ocean's knowledge concerning the activities of some of these dealers is more apparent.

At the same time, the Court has some concerns about the portion of the transcript where Mr. Ocean describes an incident where "they stole somebody gun" and he later states that "[t]hey tried to say Rico took somebody gun. I don't know." *Tr.* at 14. Mr. Ocean's references are vague and it is unclear whether he actually knows or is repeating gossip. The implication that some of the drug dealers may have stolen someone's gun is prejudicial and may cause the jury concern about the potential level of violence among the co-conspirators, and as neither Mr. Ocean nor Mr. Mitchell has been charged with a gun crime, the probative value is not obvious. It is difficult to understand the import of this interchange without a more sufficient context, which may become apparent at trial, but the Court may require that the Government redact this portion of the Podsiad interview.

---

[7] In response to Detective Podsiad's assertion, Mr. Ocean responds, "I don't even do the gun thing." *Tr.* at 13.

Mr. Mitchell and Mr. Ocean may make appropriate objections to the disputed evidence at trial.

## V. CONCLUSION

The Court DENIES Mr. Mitchell's Motion *In Limine* Regarding Statements of Co-Defendant or, in the Alternative, to Sever Defendants (ECF No. 479).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of June, 2016