UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA            )
                                    )
            v.                      )        1:15-cr-00040-JAW-3
                                    )
JERMAINE MITCHELL                   )

## ORDER ON MOTION FOR PROTECTIVE ORDER

The Court grants the Government's motion for protective order to restrict the copying and dissemination of Jencks Act material to a defendant awaiting sentencing after a guilty verdict due to concerns about the safety of cooperating informants.

## I.    BACKGROUND

On June 27, 2016, on the sixth day of a jury trial, a federal jury found Jermaine Mitchell guilty of engaging in a conspiracy to distribute or possess with the intent to distribute 280 grams or more of cocaine base, a violation of 21 U.S.C. § 841(a)(1). *Jury Verdict Form* 1–2 (ECF No. 520) (*Verdict*).  Before trial, the Assistant United States Attorney (AUSA) offered to produce Jencks Act, 18 U.S.C. § 3500, material to the Defendants, including Mr. Mitchell, in advance of the statutory deadline so long as they agreed not to copy or disseminate the material.  *Gov't Mot. for Protective Order Re: Jencks Act Materials* at 1 (ECF No. 640) (*Gov't Mot.*).  The AUSA was concerned that the material could be used to intimidate or retaliate against the cooperating defendants while they served their sentences.  *Id.*  Counsel for Jermaine Mitchell assured the AUSA that the materials would be neither copied nor disseminated.  *Id.*

The Court has scheduled Mr. Mitchell's sentencing for February 14, 2017. *Notice of Hr'g* (ECF No. 644).  The AUSA represents that defense counsel for Mr. Mitchell has stated that he intends to copy the disclosed materials and to provide copies to the Defendant.  *Gov't's Mot.* at 1–2.  The AUSA continues to be concerned about the use of these materials to harass or intimidate the cooperating informants, *id.*, and the Government seeks a protective order prohibiting counsel from copying or disseminating the Jencks Act statements the Government provided before trial.  *Id.* at 4.

In his response, Mr. Mitchell's counsel agrees that the AUSA provided Jencks Act material "[s]easonably in advance of trial."  *Opp'n to Mot. for Protective Order* at 1 (ECF No. 641).  He concurs that the material included "Grand Jury transcripts, proffer reports, interview reports, plea agreements and immunity agreements of several of the witnesses who testified at trial," *id.* and that the Government supplied the material "only upon the condition that counsel would not copy and disseminate the material to anybody, including the defendant, who was, and still is, in jail."  *Id.* Following trial, defense counsel obtained a copy of the trial transcript and supplied it to Mr. Mitchell.  *Id.*  Mr. Mitchell has now requested that his attorney send him a copy of the Jencks Act material so that he can compare the transcripts of the trial testimony to the contents of the Jencks Act material.  *Id.*  Before trial, defense counsel had provided Mr. Mitchell only with summaries of some of the witnesses' statements and testimonies.  *Id.*  Defense counsel observes that pending the imposition of sentence, Mr. Mitchell is being housed in the Hancock County Jail in Ellsworth,

Maine, three hours each way from defense counsel's office in Portland, Maine.  *Id.* at 2.

## II.   DISCUSSION

Judicial constraints on the availability of discovery in a criminal case are covered by Federal Rule of Criminal Procedure 16(d)(1):

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.

FED. R. CRIM. P. 16(d)(1).  The Supreme Court has long held that a district court may impose restrictions on the "unwarranted disclosure" of materials produced in a criminal case.  *Alderman v. United States*, 394 U.S. 165, 185 (1969).

The Criminal Rules Advisory Committee has stated that "[a]mong the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation. . . ."  FED. R. CRIM. P. 16 advisory committee's note to 1966 amendment; *see United States v. Bulger*, 283 F.R.D. 46, 55–56 (D. Mass. 2012).  Although the Rule does not define "good cause," the Advisory Committee expressly sanctions the imposition of a protective order "where there is reason to believe that a witness would be subject to physical . . . harm[.]"  *Id.* advisory committee's note to 1975 amendment.  The burden to demonstrate good cause rests with the party requesting the protective order, in this case the Government.  *United States v. Aden*, No. 3:10-CR-00260, 2011 U.S. Dist. LEXIS 158343, at *32 (M.D. Tenn. May 10, 2011); *United States v. Nelson*, 486 F. Supp. 464, 480 (W.D. Mich. 1980).  In a case where retaliation is reasonably feared against cooperating witnesses, courts commonly impose restrictions on the copying of

Jencks Act material because "[h]ard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness." *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005); *United States v. DeLeon*, No. CR 15-4268 JB, 2016 U.S. Dist. LEXIS 149631, at *121–22 (D.N.M. Oct. 28, 2016) ("'[T]he Court will order defense counsel to take these papers with them to custodial facilities, and they will ensure that no paper discovery is left with the Defendants"). Furthermore, the Government need not wait until actual threats are made or carried out in order to obtain an order restricting the copying of Jencks Act material or forbidding the possession of such material within a jail cell. As the district court in *Garcia* commented, "by the time intimidation or retaliation against witnesses has occurred, the damage has been done." 406 F. Supp. 2d at 306.

This does not mean that whenever the Government raises the specter of witness intimidation, it will meet its burden. Where specific documents are at issue, the Government has the obligation to make a "particularized, specific showing" to demonstrate good cause for the need for a protective order for each document. *United States v. Williams*, No. 15-10145-RGS, 2015 U.S. Dist. LEXIS 138261, at *11 (D. Mass. Oct. 9, 2015) (quoting *Bulger*, 283 F.R.D. at 52). However, here, the Government is proposing that the Court issue a so-called "blanket order," covering all the Jencks Act material that it disclosed pretrial to Mr. Mitchell's counsel. "Because a blanket protective order extends protection to all documents produced by the government, the government is not required to make a particularized showing of a need for confidentiality as to any specific document." *United States v. Lewis*, No.

16-30002-MGM, 2016 U.S. Dist. LEXIS 23763, at *3 (D. Mass. Feb. 26, 2016) (citing *Bulger*, 283 F.R.D. at 52–53).  At the same time, if a party has a specific objection, a court may trim an "overbroad or unnecessary" proposed order.  *Williams*, 2015 U.S. Dist. LEXIS 138261, at *13 (quoting *United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013)); *Bulger*, 283 F.R.D. at 58 ("Simply referring to broad swaths of categories of material is not sufficient").

The potential need for a blanket protection order is apparent in this case.  Mr. Mitchell stands convicted of engaging in a conspiracy to distribute or possess with the intent to distribute 280 grams or more of cocaine base, and the jury determined that Mr. Mitchell's own conduct involved 280 grams or more of cocaine base.  *Verdict Form* at 1–2.  With this verdict, Mr. Mitchell faces a minimum prison term of ten years and a maximum of life.  21 U.S.C. § 841(b)(1)(A).  Although the Presentence Report has not been finalized, an initial draft set his guideline sentence range at 360 months to life.  *Presentence Investigation Report* ¶ 52.  Some members of the drug trafficking conspiracy gave information to the Government in its investigation of the conspiracy, and some testified against him at his trial; it would only be natural for Mr. Mitchell to be displeased with the people whose cooperation with the Government helped subject him to a long term of incarceration.  *See Lewis*, 2016 U.S. Dist. LEXIS 23763, at *2–5 (approving a blanket protective order in a sex trafficking case because of vulnerable victims subject to threat of physical injury).

More significantly, the conspiracy in this case originated in New Haven, Connecticut, and its prime movers were members of the Red Side Guerilla Brims, a

violent street gang that is an affiliate of the Blood Nation. According to the trial testimony, one of the chiefs of the Red Side Guerilla Brims ordered a New Haven gang member to Maine to oversee the Bangor-area operation because of the gang member's alleged involvement in the murder of a New Haven resident and the risk of retaliation in Connecticut. The Red Side Guerilla Brims' Bangor operation involved not only crack cocaine and some heroin, but it also involved trafficking in firearms. Thus, the Red Side Guerilla Brims and some of the members involved in the Maine operation have a well-earned reputation for violence and a demonstrated access to numerous firearms. While there is no evidence that Mr. Mitchell, who had been living locally for a number of years, was a member of the Red Side Guerilla Brims, and there is no evidence that he engaged in any violence, he is the cousin of the New Haven leader of the gang. In fact, it was through his cousin that Mr. Mitchell became involved in the Bangor-area arm of the gang's drug trafficking operation.

Finally, the Government is not proposing that Mr. Mitchell be denied access to the contents of the Jencks Act material; it is only proposing that he not be given copies of the material and that Mr. Mitchell review the produced documents in the presence of counsel. Once copies of testimony or witness statements are handed over to an inmate, there is no telling where they will end up or what use (or misuse) might be made of them. *See United States v. Leland*, No. 1:03-cr-00033-JAW, 2015 U.S. Dist. LEXIS 53666, at *13–17 (D. Me. Apr. 21, 2015) (addressing defendant's dissemination of investigative material to threaten cooperating co-defendant and the discovery of investigative materials during the execution of a search warrant of a private

6

residence). Also, the investigative material would be necessarily broader than the transcripts of testimony of trial witnesses, because the cooperating statements to law enforcement named names and described events not directly relevant to the trial itself. Lastly, unlike word of mouth, written informants' statements are concrete corroborative evidence of their cooperation with law enforcement. In similar circumstances, courts have approved similar restrictions. *Williams*, 2015 U.S. Dist. LEXIS 138261, at *14, n.7; *United States v. Guerrero*, No. 09 Cr. 339, 2010 U.S. Dist. LEXIS 37085, at *34–35 (S.D.N.Y. Apr. 14, 2010); *United States v. Scott*, No. 1:05-CR-443-11, 2008 U.S. Dist. LEXIS 71095, at *4–5 (M.D. Pa. Sept. 19, 2008) ("[T]urning over hard evidence of witness cooperation risks facilitating witness intimidation"); *Garcia*, 406 F. Supp. 2d at 306–07.

Finally, the Court appreciates defense counsel's concern about the cost and inefficiency of his driving six hours to sit in a room while Mr. Mitchell reads the Jencks Act material and compares it to the trial transcripts; however, the Court views the inconvenience and expense of a protective order restricting the dissemination of written discovery as one of the unavoidable and necessary costs of a criminal justice system that relies on the cooperation of informants to investigate and prove cases.

## III.   CONCLUSION

The Court GRANTS Government's Motion for Protective Order Re: Jencks Act Materials (ECF No. 640) and ORDERS defense counsel for Jermaine Mitchell not to copy or disseminate the Jencks Act material the Government provided to him before the trial of this case, to make such material available to Jermaine Mitchell only in

the presence of defense counsel, and to collect such material and secure it after Jermaine Mitchell has completed his review of it.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2016

8